IN THE MATTER OF: R.C., J.C., N.R.
No. COA08-1480
Court of Appeals of North Carolina
Filed May 5, 2009
This case not for publication
J. Edward Yeager, Jr. for petitioner-appellee.
Thomas B. Kakassy, P.A., by Thomas B. Kakassy, for respondent-appellant.
Kilpatrick Stockton LLP, by John M. Moye and Alan D. McInnes, for guardian ad litem.
GEER, Judge.
Respondent mother appeals from the trial court's permanency planning orders with respect to her two children, "Rob" and "Jill," and respondent's younger sister, "Nina," of whom respondent had court-ordered custody.[1] While respondent argues vigorously on appeal that the trial court should not have placed the children with "other parties," resulting in her "losing her children forever," respondent, at the permanency planning hearing, consented to the trial court's granting legal and physical custody of Jill to her biological father, R.C., and substantially concurred in the trial court's decision to cease reunification efforts with her sister Nina and change Nina's permanent plan to guardianship with a relative. Although respondent did oppose the selection of Nina's uncle, T.C., as her guardian, respondent has made no specific argument on appeal as to why the trial court erred in naming T.C. as Nina's guardian. Because of respondent's failure to preserve any issues regarding Jill and Nina for appeal, we do not address the permanency planning orders as they relate to those two children.
With respect to Rob, respondent argues that the trial court did not make sufficient findings of fact to justify its decision to grant guardianship of Rob to R.C., Rob's legal father and the only father he has known. While the order's findings of fact are not a model of clarity or detail, they are minimally sufficient to meet the requirements of N.C. Gen. Stat. § 7B-907(b) (2007) and to allow us to perform our appellate review. Accordingly, we affirm.

Facts
Respondent is the mother of Rob and Jill. R.C., respondent's ex-husband, is the father of Jill and the legal father of Rob, although not his biological father. Respondent is Nina's older sister; a court awarded respondent custody of Nina in 2006. T.C. is Nina's uncle.
The Mecklenburg County Division of Youth and Family Services ("YFS") filed juvenile petitions on 6 March 2008 and amended petitions on 13 March 2008, alleging that Rob, Jill, and Nina were neglected and dependent juveniles based on respondent's drug abuse and her inappropriate discipline of the juveniles. In orders entered 6 March 2008, the trial court granted YFS non-secure custody of all three juveniles. The trial court conducted adjudication and disposition hearings on 10 June 2008. At the hearing, Jill and Rob testified, as well as the children's school teachers, an investigating social worker, and respondent. As the trial court found in its adjudication and disposition order for Jill and Rob, the children "testified to physical discipline by their mother that included slaps, punches and kicks that at times resulted in bruises, cuts or marks on them." Respondent admitted that she had "inappropriately disciplin[ed] [Jill] with a broom stick." The trial court ultimately found that "inappropriate discipline by [respondent] is a major issue in this case."
In orders entered 14 July 2008, the court adjudicated all three juveniles as neglected and dependent. In the dispositional portion of the orders, the trial court concluded that the permanent plan should be reunification for Jill and a concurrent plan of reunification and legal guardianship for Rob and Nina. The trial court authorized placement of Rob and Jill with R.C. and placement of Nina with T.C. The order adopted YFS's recommendation that respondent follow the objectives of her Family Services Agreement, which included requirements that respondent (1) complete a "Family In Recovery to Stay Together" ("FIRST") Assessment and follow through with all of the treatment recommendations; (2) participate in domestic violence education and be able to demonstrate the skills she learned; (3) remain drug and alcohol free; (4) participate in random drug screens; (5) maintain stable housing and employment; and (6) attend therapy sessions for individual and family therapy.
As of an 18 August 2008 review hearing, respondent had been referred to the Women's Commission to address her domestic violence issues, had attended two preliminary meetings, but had then failed to return to class. The Women's Commission, therefore, terminated services. Although respondent was undergoing substance abuse treatment, after testing positive for marijuana in March 2008, respondent had subsequently failed to submit to seven drug screen requests between April 2008 and July 2008. In its review hearing order, the trial court noted that respondent, in order to achieve reunification, needed to achieve full compliance with her case plan, demonstrate skills learned, and follow up with domestic violence and mental health services. In addition, the trial court found that Nina was doing well in her placement with her uncle and adopted YFS's recommendation that her permanent plan be guardianship with her uncle with a concurrent goal of reunification with respondent.
The permanency planning hearing at issue in this case was held on 18 September 2008. On 3 October 2008, the trial court entered an order ceasing reunification efforts by YFS with respondent and granting R.C. guardianship of Rob and physical and legal custody of Jill. In a separate order entered the same day as to Nina, the trial court ceased reunification efforts with respondent and granted T.C. guardianship of Nina. Respondent timely appealed from both 3 October 2008 permanency planning orders.

Discussion
As an initial matter, we must point out that respondent's positions on appeal are inconsistent with the positions that she took before the trial court. During the permanency planning hearing at issue in this appeal, respondent's counsel specifically advised the court that respondent "does not have a problem" with the trial court's adopting YFS's recommendation as to Jill that custody be vested in R.C. She instead argued solely that the court should hold off divesting YFS of custody of Rob "and allow her to complete her case plan with reunification with [Rob] only." (Emphasis added.) As for Nina, respondent did not seek to be able to reunify with her sister and stated that "she's fine that if [Nina] does not want to visit, you know, despite her years of caring for [Nina], that's fine." Her sole objection as to Nina was her contention that guardianship should not be given to her uncle T.C. because he had not undergone any drug tests and had once had custody of his sister, a 24 year old scheduled to be released from prison.
Because respondent consented to the grant of Jill's custody to R.C. and to divesting YFS of custody over Jill, respondent did not properly preserve for appeal her contentions regarding the permanency planning order as it pertained to Jill. Simply put, she invited any error. See N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.").
We observe further as to Jill, that the trial court found, in its permanency planning order, that it was possible for Jill to be returned home  to her father  within six months. Respondent has not assigned error to that finding of fact or included any argument in her brief that this determination was in error. See N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10."); N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). Since respondent has made no argument why additional findings of fact were necessary given this unchallenged determination, respondent has presented no basis for overturning the trial court's order as to Jill.
With respect to Nina, respondent did not preserve any issue regarding the ceasing of reunification efforts with Nina or to the court's making Nina's permanent plan guardianship with a relative, although she did preserve an objection to T.C.'s being Nina's guardian. Further, the trial court specifically noted in its order relating to Nina that respondent opposed YFS's recommendation that T.C. be designated Nina's guardian. It then found in support of its decision adopting that recommendation _ and addressing respondent's only objections at trial  that T.C. had undergone three negative drug screens and had previously provided temporary care for the juvenile before she came into YFS's custody. The court further found that Nina's guardian ad litem supported the YFS recommendation and that Nina's biological mother supported having T.C. appointed as Nina's guardian.
Respondent has not assigned error to these findings of fact, and although including a reference to Nina in the heading to each argument, does not set out any specific argument as to why the findings of fact in the order relating to Nina were inadequate, especially with respect to the only issue properly before this Court: whether T.C. was properly named Nina's guardian. Instead, respondent's brief addresses the removal of the children from "their mother" only six months after the filing of the juvenile petitions. Respondent, of course, is not Nina's mother. Since respondent only preserved a limited issue for appeal as to Nina and did not specifically address the trial court's findings of fact as to Nina, we do not address the permanency planning order entered regarding Nina.
In her appeal, respondent argues that the trial court's findings of fact are inadequate under N.C. Gen. Stat. § 7B-907(b) to support the court's decision. N.C. Gen. Stat. § 7B-907(b) provides in pertinent part:
At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
In light of respondent's failure to preserve any argument as to Jill or Nina, we consider the adequacy of the findings of fact under this provision only as to Rob.
Although the trial court is required to make findings with respect to all relevant factors, "the trial court is not required to make every finding listed under section 7B-907(b)." In re K.S.,183 N.C. App. 315, 323 n.1, 646 S.E.2d 541, 545 n.1 (2007). As long as the trial court makes written findings addressing the relevant § 7B-907(b) factors, the permanency planning order is sufficient in this respect. In re L.B., 181 N.C. App. 174, 190, 639 S.E.2d 23, 31 (2007). "The resulting findings of fact must be `sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.'" In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (quoting Quick v. Quick, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982)).
In this case, the trial court used a form order in which certain boxes were checked and handwritten additions and explanations were made. Because of the nature of this case, the two orders are somewhat confusing. Nonetheless, Rob's permanency planning order contained the required findings of fact.
The trial court first found that both Rob and Jill had been adjudicated neglected and dependent as to respondent mother and their fathers. The trial court then found that Rob could not be returned home within six months and that it was not in his best interests to return home because the "[i]ssues that led [Rob] into custody have not been remedied adequately by either parent. [Rob] continues to decline visits [with mother] and [his biological father] has not entered into a [case plan] but previously expressed he would like [Rob] to be [with] legal [father, R.C.]." While the trial court acknowledged that respondent mother had completed some of her requirements  including completion of a FIRST assessment, participation in substance abuse treatment, and having housing and employment  she had not fully and consistently complied with her plan. These findings address N.C. Gen. Stat. § 7B-907(b)(1).
The trial court then noted, as required in § 7B-907(b)(2), that it had considered whether legal guardianship or custody with a relative or some other suitable person should be established and found that guardianship with Rob's legal father was in Rob's best interest because "[Rob] only knows [R.C.] as his father." As a barrier to adoption, the factor set out in N.C. Gen. Stat. § 7B-907(b)(3), the trial court found that the goal for Rob was guardianship with R.C. Finally, the trial court found, as required by N.C. Gen. Stat. § 7B-907(b)(4), that Rob should remain in his current placement with R.C.
The trial court addressed N.C. Gen. Stat. § 7B-907(b)(5) by specifically finding that YFS had made reasonable efforts to implement the permanent plan for the juvenile. The trial court noted that YFS had done so by maintaining contact with the service providers.
The trial court then made the following additional findings regarding Rob:
Both [Jill and Rob] continue to decline visits [with mother] and therapist reports they should not be forced to have visits at this time. [Mother] opposes rec. for guardianship of [Rob] to be granted to [R.C.] [Mother] & [R.C.] oppose Dept.'s proposed post-custody guardianship visitation plan. [Biological father's attorney] reports she has had no contact [with] her client during rev. period. Dept. waiting to receive signed child supp. order from Ct. in order to refer case to CSE for continued enforcement of child supp. and establishment re: the [mother] making[payments] for [Jill and Rob]. GAL supports Dept. recs.
Finally, the trial court determined that termination of parental rights was not in the best interest of Rob or Jill.
Respondent does not point to any specific factor under N.C. Gen. Stat. § 7B-907(b) on which the trial court failed to make a finding of fact. Respondent instead primarily argues that the trial court's order is inadequate because it made "almost no independent findings of fact of any sort," but rather broadly incorporated written reports from outside sources. This Court has explained that "although the trial court may properly incorporate various reports into its order, it may not use these as a substitute for its own independent review." In re M.R.D.C., 166 N.C. App. 693, 698, 603 S.E.2d 890, 893 (2004), disc. review denied, 359 N.C. 321, 611 S.E.2d 413 (2005). Thus, because a trial court "may not delegate its fact finding duty[,]" a court "should not broadly incorporate . . . written reports from outside sources as its findings of fact." In re J.S., 165 N.C. App. at 511, 598 S.E.2d at 660 (emphasis added).
We disagree with respondent's characterization of the order as failing to make independent findings of fact. While the trial court did incorporate by reference the YFS report at various points in the order, the court then proceeded to make its own independent findings based on that report. While the order could have been clearer and more detailed, it did not cross the line into improper delegation of the fact finding process. See In re C.M., 183 N.C. App. 207, 212-13, 644 S.E.2d 588, 593-94 (2007) (holding that trialcourt did not improperly incorporate social worker's report, GAL's report, and psychological evaluations when it set them out and then made subsequent independent findings).
Respondent also contends that this case is controlled by J.S., 165 N.C. App. at 511, 598 S.E.2d at 660, in which the trial court entered a "cursory two page order." In that order, the trial court incorporated by reference as findings of fact a DSS report and a mental health evaluation of the juvenile in a manner that constituted an improper delegation of fact finding. Id. In addition, with respect to the findings of fact required by N.C. Gen. Stat. § 7B-907(b), the trial court simply recited that the children could not be returned home without explaining "why it was not possible for the minors to be returned home." J.S., 165 N.C. App. at 512, 598 S.E.2d at 661. Overall, this Court concluded that the trial court's findings constituted a "mere recitation of the status of the case" and failed to adequately address the relevant statutory factors. Id. at 513, 598 S.E.2d at 661.
In this case, however, the trial court addressed each of the relevant criteria in N.C. Gen. Stat. § 7B-907(b) and provided a factual basis for its determinations under each of those criteria. While respondent further urges that the trial court provided no justification for its determination that guardianship with R.C. was in the best interests of Rob, the trial court specifically explained the basis for its decision: that Rob did not want to see his mother, his therapist did not believe he should be forced to do so, respondent had not fully and consistently complied with her plan with YFS, R.C. was Rob's legal father, and Rob "only knows" R.C. "as his father." Respondent complains that certain of the trial court's findings are conclusory _ and we agree the better practice would be to supply more detail _ but the findings regarding Rob are "'sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.'" J.S., 165 N.C. App. at 511, 598 S.E.2d at 660 (quoting Quick, 305 N.C. at 451, 290 S.E.2d at 657).
Finally, respondent contends that the trial court should have made "'special' findings of fact" to justify not giving respondent a 12-month period to work on her case plan in order "to keep from losing her children forever." Although respondent's assertion that she was "losing her children forever" amounts to inaccurate hyperbole, respondent, in any event, cites no authority for any requirement of "special" findings and acknowledges that this Court has previously rejected her contention that she should have been afforded a full year to make progress on her case plan.
In In re T.R.M., 188 N.C. App. 773, 781, 656 S.E.2d 626, 632 (2008), the respondent argued that the trial court erred in changing the permanent plan to guardianship without giving her a year to comply with her case plan. This Court held: "Nothing in the permanency planning statute requires the trial court to allow a respondent a certain period of time to comply with directives in order that the juvenile may be returned to the home. The only requirement of the trial court is to make necessary findings of fact when a juvenile is not returned to his or her home. See N.C.Gen. Stat. § 7B-907(b) (2007)." Id. at 782, 656 S.E.2d at 632. The Court then concluded that "the trial court made the necessary findings of fact pursuant to section 7B-907(b). Therefore, the court did not err in deciding the child was not likely to be returned home within the next six months, nor did the court err in changing the permanent plan to guardianship and relieving DSS of its obligation to continue with reunification efforts." Id.
In this case, we have similarly held that the trial court made the necessary findings of fact pursuant to N.C. Gen. Stat. § 7B-907(b). Accordingly, as T.R.M. holds, the trial court did not err in failing to give respondent a year to work on her case plan before changing the permanent plan for Rob to guardianship with his legal father. No further findings of fact were necessary on this issue and, therefore, we hold that the trial court's order contained sufficient findings of fact to support its decision.
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The pseudonyms "Rob," "Jill," and "Nina" are used throughout this opinion to protect the privacy of the children and for ease of reading.